Filed May 12, 1891.

---

No. 14.

## THE PHENIX INSURANCE COMPANY OF BROOKLYN v. BOYER.

INSURANCE.—*Forfeiture by Reason of Breach Against Vacancy.—Waiver.*— Where a policy of insurance on a dwelling-house is conditioned to be void if the house should become vacant or unoccupied, the right being reserved to the company to cancel the policy for a breach of the condition by returning the unearned premium, if the company after notice that the property has become vacant accepts payment of the premium due, and refuses, when requested by the insured, to return the unearned premium and cancel the policy or issue a vacancy permit, it thereby waives the right to forfeit the policy and is liable for any loss that may afterwards occur.

From the Henry Circuit Court.

*A. C. Ayres, E. A. Brown* and *L. M. Harvey,* for appellant.

*J. H. Binford* and *M. E. Forkner,* for appellee.

ROBINSON, J.—Appellee sued the appellant upon a policy of fire insurance for a fire loss.   The complaint contained two paragraphs.   The first paragraph alleged that the appellant issued the policy; that appellee owned the property; that the building was destroyed by fire during the term the policy had to run; that due notice of loss was given.   The policy was set out, and it was alleged that the house was vacant to the knowledge of the appellant at the time the policy was issued, etc.

The second paragraph of the complaint is substantially the same as the first, except that it alleges that though the house was occupied at the time the policy was issued it became vacant before the maturity of the premium note, and that with knowledge of such vacancy the appellant accepted full payment of said premium note; that afterwards appellee requested that the insurance be held good until he could get a tenant in the house; that this was refused, and appellee then demanded a cancellation of the policy, and a return of the unearned premium.  The appellant refused to do either, and then and thereby elected to waive the condition in the policy against vacancy, and continued the policy in force, and that it so remained until the house was burned, about two years thereafter.

The appellant demurred to the complaint, which was overruled and excepted to, and then answered in two paragraphs:

*First.*   General denial.

*Second.*   That the contract of insurance was composed of the application and policy.

Both are set out, and show that the insurance was wanted and granted on a house while occupied by a tenant as a dwelling, and that without the knowledge or consent of the appellant the house was vacant when burned.   The reply was

in general denial. Upon this issue the cause was submitted to the court, and tried upon an agreed statement of facts, as the evidence. There was a finding and judgment for the appellee. Motion for a new trial overruled, and excepted to.

The argument of counsel is limited to the alleged error in the court in overruling the motion for a new trial under the causes that the finding was not sustained by sufficient evidence, and was contrary to law.

Among the agreed statement of facts upon the trial of said cause were the following : That, upon the 21st day of February, 1885, appellee made his application to the company of the appellant, through its duly authorized agent, for insurance on a one and one-half story building and dwelling-house owned by the appellee, and situated upon his farm, which application was in writing, and was made a part of the contract of insurance under the policy issued thereon ; that said application was forwarded by the agent, to whom it was made, to the company's general agent at Chicago ; that thereupon said company executed and delivered to the appellee a policy of insurance on said building for $500, to run for three years, and which expired at twelve o'clock at noon on the 21st day of February, 1888 ; that the agent to whom such application was made continued as such up to the trial of this cause ; that, at the time said application was made and policy issued, said building was occupied by a tenant, and continued to be so occupied until in March, 1885, when the tenant moved out, and the house was rented to another tenant until March, 1886, who occupied it until September, 1886, when he left the property, and it remained vacant from thenceforward until destroyed by fire, for the reason that appellee could not obtain a tenant therefor ; that appellee made a contract in the fall of 1885 with a party to occupy the house from March, 1886, who desired to occupy the house before the expiration of the other tenancy, but could not obtain the keys from the former tenant until March, 1886, at the expiration of his tenancy, and the last

named party failed to take or occupy the house; that appellee, at the time said policy was issued, executed a note for the premium as recited in the policy, and he paid the same to the company sixty days before it became due, it becoming due January 1st, 1886; that in the latter part of October, 1885, appellee wrote a letter to the agent of the company, to whom he had made the application for said insurance, and who was still such agent, informing him that said building was vacant, and asking a permit from the company for it to stand vacant until it could be occupied, and he answered appellee's letter, refusing to give such permit; that appellee had before that time notified the said agent that his house was vacant, and requested a permit for it to stand vacant, but none was given, and thereafter, on November 20th, 1885, the appellee wrote said agent, saying: "If your company will not hold the insurance good on my vacant house till I can get it occupied, or give me a permit to let it stand until March 1st, then they can cancel my policies, all of them, and return me the unearned premiums;" this letter was forwarded by the agent to the general agent at Chicago, who had full authority to act thereon with the agent's recommendation and endorsement, and was received by the general agent in Chicago on December 2d, 1885; that said company never answered said letter, and did not send or grant the appellee any permit for said house to stand vacant, nor did said appellant at any time cancel said policy or notify the appellee of the intention so to do, or notify appellee of an intention, desire or willingness so to do, but remained entirely silent; that, on the 30th day of November, 1887, said building was totally destroyed by fire, without the fault of the appellee; that it was appellee's property; was worth more than $500; that appellee made due proof of loss; that after proof of loss appellant wrote appellee a lengthy letter, declining to pay the loss, and repudiating liability, for the reason, among others, that when said loss occurred, and for some time previous thereto, the property had been vacant.

Under these facts and in order to clearly understand the contentions in the argument it will become necessary to quote from certain parts of the application for insurance and the policy issued thereon. The following provisions are contained in the application which forms a part of the contract of insurance :

"Application of Charles G. Boyer * * * for insurance against loss or damage by fire * * * according to the specifications below, * * * on one and one-half story, shingle roof, frame building while occupied by tenant as a dwelling."

The policy issued upon this application contains the following : * * * " Do insure Charles G. Boyer against loss or damage by fire, * * * $500 on one and one-half story, shingle roof, frame building, occupied by tenant as dwelling.

" This insurance is based upon the representations contained in the insured's application, * * * each and every statement of which is hereby specifically made a warranty and part hereof, and it is agreed that if the above mentioned buildings be or become vacant or unoccupied, * * * without consent endorsed hereon, then and in each and every of the above cases said policy shall become null and void.

" No agent or employee of this company, or any other person or persons, have power or authority to waive or alter the terms or conditions of this policy, except only the general agent at Chicago, Illinois, and any waiver or alteration by him must be in writing.

" If above mentioned building be or become vacant or unoccupied, * * * without consent endorsed hereon, * * * then * * * the policy shall be null and void.

" This company reserves the right to cancel this policy or any part thereof by tendering to the assured the unearned premium."

Having thus endeavored to be accurate, and painstaking in the statement of facts that must necessarily have a controlling influence upon the legal questions that are the legitimate sequence of these facts, we readily recognize the im-

portance of the legal propositions involved. It is contended by the appellee that, as the appellant received payment of the premium note, in consideration of which the policy was issued, after full notice that the property had become, and was then, vacant, it thereby conclusively waived the right to forfeit the policy on account of the alleged breach of the condition as to vacancy therein contained, and that the condition as to vacancy does not render the policy void, but voidable, at the election of the company; when appellant received notice that the property was vacant, and was requested to cancel the policy and return the unearned premium, or give a vacancy permit, appellant was put to elect to forfeit the policy and return the unearned premium, or be bound by the policy; and having failed to exercise the right of election was bound by the policy, and is estopped from setting up the forfeiture. The appellant, on the other hand, earnestly contends that the conditions as to vacancy of the building worked a forfeiture; that the policy was void, not voidable, and that there was no waiver. There is no doubt as to the propriety of insurance companies annexing such conditions in contracts of insurance as are contained in the contract with the appellee in the case at bar; and that such conditions may be essential and necessary to their protection, and the proper and successful management of the business of insurance; but the question is whether such conditions are not for the benefit of the company, and may not be waived, and do not, in such cases, render the policy void, but voidable. It is held, in cases of high authority, that "a continuing warranty in a policy of insurance, the breach of which, whether injurious to the insurer or not, avoids the policy, being in the nature of a forfeiture, must be construed as strongly against the insurer, and as favorably for the insured, as its terms will reasonably permit." This particular question seems to have been considered in the case of *Masonic Mutual Benefit Ass'n* v. *Beck*, 77 Ind. 203. Judge Woods, in delivering the opinion, cites, with approval, the case

of *Viele* v. *Germania Ins. Co.,* 26 Iowa, 1, wherein the court says: " The position of defendant's counsel, which is supported by several authorities, is to the effect that upon the breach of the conditions of the policy by the assured, which would defeat recovery thereon, it becomes absolutely void—as it were, dead—and that nothing short of a new creation could impart vitality to it. This doctrine is certainly unsound when applied to other contracts ; for, on the contrary, after default in the conditions by one party, the other may waive the forfeiture, and treat the instrument as of binding force upon himself. No reason can be given to except policies of insurance from the operation of this rule."

The learned judge, in commenting upon this statement of the law, says : " The logical and necessary deduction from this doctrine is, that a distinct act of affirmance of the contract by the party entitled to avoid it, made with knowledge of the facts, and especially such acts as the demand and receipt of premiums or assessments, would constitute a waiver of the forfeiture or of the right to annul the contract ; and so it is held in several of the cases already cited." A large number of authorities are cited in support of the view expressed. The case of *Excelsior Mut. Aid Ass'n, etc.,* v. *Riddle,* 91 Ind. 84, declares the same doctrine.

But returning to the agreed facts we find that appellee paid the premium for which he had given his note due January 1st, 1886, sixty days before it was due ; that before payment he notified the agent to whom he made the application for insurance that the building was vacant, and asked a permit from the company for it to stand vacant until it could be occupied, which request was refused by the agent, and had before that time notified said agent that the house was vacant and requested a permit for it to stand vacant but none was given ; that on the 20th day of November, 1885, appellee again notified the agent with whom he made the application for insurance that

The Phenix Insurance Company of Brooklyn *v.* Boyer.

the house was still vacant and asking a permit of vacancy, or a cancellation of the policy and the return of the unearned premium. This letter was forwarded by the agent, with his endorsement thereon, to the general agent at Chicago, who, it is conceded, had full authority to act thereon, and was received by him on the 2d day of December, 1885, but said letter was not answered, no permit of vacancy was given, the policy was not cancelled and there was no notice to appellees of appellant's intention so to do, but appellant remained entirely silent and did not return the unearned premium, and although appellant had notice that said building was vacant, the appellant took no action under the conditions in said policy and contract of insurance toward annulling or cancelling the same, but retained the unearned premium and made no claim of the forfeiture of said policy until after appellee's loss by fire. That appellant upon notice that the building was vacant could have returned the unearned premium and elected to declare the policy forfeited is doubtless true, but having under the facts stated waited, without any action, until after the loss by fire, was appellant then in a condition to claim exemption from the payment of the loss by reason of the conditions named in the contract of insurance? We have given the principle arising out of these facts mature and careful consideration, and as a result the inquiry forces itself upon us, can we declare, as a principle of law, that an insurance company may receive the premium for the full term of the policy under the conditions in a contract similar to those in the case at bar, having the right to return the unearned premium for a breach in the contract and cancel the policy, and with full notice of such breach, retain the premium, remain silent, take no action, and without notice to the assured until after loss, then claim to be exempt from payment of loss and assume the policy is forfeited? The current of the decisions upon conditions in insurance contracts similar to those named holds that for-

feitures do not exist in such cases, and do not constitute a defence to an action for loss sustained.

It is a common thing for insurance policies to contain the condition :  " If the assured shall have or hereafter make any other insurance on the property herein insured, or any part thereof, without notice to or consent of this company, in writing, endorsed hereon, this policy shall become void." The condition that the policy shall be void should the building insured become vacant is of no more apparent importance and necessity for the protection to insurance companies than the condition quoted against other insurance without consent endorsed on the policy.

In the case of *Phœnix Ins. Co.* v. *Spiers,* 87 Ky. 285, it is said : " The decided current of authority, however, is that this waiver may arise from the act or conduct of the insurer; and silence for an unreasonable time upon his part, after notice or knowledge of the breach of the condition, will constitute such conduct.  If notice be given to the company of the additional insurance or increased risk, and no objection be made within a reasonable time, fairness and good faith should estop it from insisting upon a forfeiture of the policy because its consent was not endorsed upon it according to its literal terms. The assured has a right to infer therefrom that the company will not insist upon it.  It has not spoken as to a matter for its benefit when it could and should have done so to prevent another from being misled to his probable injury.  If it had done so, he might have protected himself, probably by other insurance.  Its silence under such circumstances is a consent to the additional insurance.  A forfeiture upon this ground is not for fraud.  It may cancel the policy by reason of it, but if it does so, it must refund a proper proportion of the premium.  It can not, therefore, remain mute with a knowledge of the existence of a ground of forfeiture, and if there be no loss, retain the entire premium, but if there be one, rely upon the breach of the contract.

Vol. 1.—22

The term 'void,' as used in the policy, is to be regarded as meaning that the insurer may, at his exclusive option, treat it so, and not that the contract becomes an absolute nullity as to either party. The insurer may, therefore, by his conduct, waive his right of forfeiture, and estop himself from insisting upon it."

The case of *Hamilton* v. *Home Ins. Co.*, 94 Mo. 353, is in accord with the above case.

In *Havens* v. *Home Ins. Co.*, 111 Ind. 90, it is said: " It is abundantly settled that, notwithstanding conditions in the policy, if at the time the insurance was effected, or afterwards, there were conditions, uses or incidents of the risk which were in conflict with conditions in the policy, and which were known to the insurer, or its agent, whose knowledge is imputable to the company, such conditions, uses, or incidents can not be used to defeat a recovery after a loss has occurred."

It is further said in this case : " The tendency of the modern cases is to hold that, if notice be duly given to the company or its agent of additional insurance, or if actual knowledge is brought home that other insurance exists, or has been obtained, and no objection is made, the company will be estopped from insisting on a forfeiture because its consent was not endorsed on the policy.  Wood Fire Ins., sections 382, 383; May Ins., sections 369, 370.  Having knowledge of the other insurance, the company may manifest its dissent by cancelling its policy ; otherwise it will be treated as having assented, and waived compliance with the condition."

In the case of *Wakefield* v. *Orient Ins. Co.*, 50 Wis. 532, the facts and conditions in the contract of insurance are almost identical with those in the case at bar, in fact there is no distinguishable difference.  This case plainly declares the doctrine that notice to the company that the insured premises had become vacant, a failure to return the unearned premium and cancel the policy before loss, was,

after loss, under these facts and conditions, a waiver of forfeiture, and the company would be bound for the loss.

See, also, *Haight* v. *Continental Ins. Co.,* 92 N. Y. 51; *Short* v. *Home Ins. Co.,* 90 N. Y. 16.

From the foregoing considerations we are clearly of the opinion that there was no forfeiture of the policy issued by the appellant to the appellee, but that such forfeiture was waived by the appellant, and that said policy was in force when the appellee's building insured therein was destroyed by fire.

There was no error in overruling the motion for a new trial.

The case should be affirmed, and is affirmed, at appellant's costs.

